ORDERED.

Dated: November 07, 2017

_____
Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

JENNA R. RYAN,                                    Case No. 3:17-bk-1507-JAF
                                                  Chapter 13
    Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is before the Court for confirmation of Debtor's Chapter 13 Plan (Doc. 4) and on an objection to confirmation raised by the Chapter 13 Trustee (the "Trustee") at the confirmation hearing held on October 3, 2017. Upon the stipulated facts and argument presented at the confirmation hearing, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

In April 2017, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. (Doc. 1). The Claims Register contains fifteen claims totaling $173,301.40. The single largest claim is held by the Department of Education for $79,991.78 and pertains to unsecured federal student loans. (Claim 11). The Internal Revenue Service has a priority unsecured claim for $4,191.05. (Claim 4). There are two secured claims which total $35,946.95 and relate to two

vehicles owned by Debtor. (Claims 2 & 3). The remaining claims consist of non-student-loan general unsecured consumer debt. Only the Trustee has filed an objection to confirmation; the Department of Education did not file an objection to the proposed plan.

Debtor's monthly "disposable income" under 11 U.S.C. § 1325(b)(2) is $ 4,417.72. (Doc. 1 at 53). The proposed plan calls for monthly payments of $1,430.09 for sixty months. (Doc. 4 at 1). Under the terms of the plan, all debt except for the long-term student loan debt will be paid in full on or about the forty-seventh month of the plan. The plan's relevant nonconforming provisions of paragraph 9 are as follows:

> c.  The Debtor is indebted to Department of Education/Nelnet.[1] The Debtor is current with her payments to this creditor. The Debtor shall continue to pay this creditor the **regular monthly payments** outside the plan directly to the creditor. The Trustee shall make no payment to this creditor.
>
> d.  If this plan is confirmed at a 100% plan pursuant to 11 U.S.C. § 1325(b)(l)(A), any future modification under 11 U.S.C. § 1329(a)(1) to decrease the distribution to the unsecured class will require retroactive compliance with 11 U.S.C. § 1325(b)(1)(B).

(Doc. 4) (emphasis added).

Debtor and the Trustee filed a written stipulation of facts as follows:

1.  Debtor filed a Chapter 13 petition on April 26, 2017.
2.  The proposed plan indicates the Debtor will pay the student loan creditors outside the terms of the plan in paragraph 9 of the form plan filed on her behalf:
    > c.  The Debtor is indebted to Department of Education/Nelnet. The Debtor is current with her payments to this creditor. The Debtor shall continue to pay this creditor the regular monthly payments outside the plan directly to the creditor. The Trustee shall make no payment to this creditor.

---

[1] Nelnet services the loan, but the debt is owned by the federal government.

3. The Debtor, having the position that in this case the student loans can and should be paid outside the terms of the plan, agrees to the following language in paragraph 9 of the form plan filed on her behalf:

   d. If this plan is confirmed at a 100% plan pursuant to 11 U.S.C. § 1325(b)(l)(A), any future modification under 11 U.S.C. § 1329(a)(1) to decrease the distribution to the unsecured class will require retroactive compliance with 11 U.S.C. §1325(b)(1)(B).

4. The Debtor has filed a Statement of Current Monthly income and Calculation of Commitment Period and Disposable Income which evidences that she has a disposable monthly income of $4,417.72.

5. Based on the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, over the life of a sixty-month plan, the unsecured claims should receive a total of $265,063.20, or be paid in full.

6. The proposed plan pays a total of $69,538.66 to the allowed unsecured claims.

7. The unsecured claims total $133,163.40 which includes those claims from the student loan agencies (Claim 11).

8. Without payments on the student loan claim, the unsecured claims total $53,271.62.

9. Claim 11 has been filed by the U.S. Department of Education for a total amount of $79,991.78.

10. Upon request of the Trustee, the Debtor has supplied proof that she paid the student loan payments owing to the creditor in March and April, 2017.

11. The Debtor stopped making those payments as of May 2017.

12. The Debtor indicates, and the Trustee has no reason to doubt the assertion, she was making payments up until the filing of the bankruptcy case. Once the bankruptcy case was filed, the servicer involuntarily put her in a forbearance status.

13. The servicer for the U.S. Department of Education has told the Debtor that she can make voluntary payments.

14. The Debtor has made monthly payments to the U.S. Department of Education since the filing of the bankruptcy.

    a. March 17, 2017 - paid $739.82.

    b. April 17, 2017 - paid $739.82.

        c.        July 7, 2017 - paid $200.00.

        d.        August 18, 2017 - paid $300.00.

        e.        September 18, 2017 - paid $200.00.

        f.        Debtor did not make a payment in May or June 2017 as she was initially waiting to see if the plan as proposed would be confirmed. She resumed payments as of July 2017 when she realized the Trustee's position on the matter.

15.      It is the Debtor's position that there are no payments due under the terms of the student loan, given the filing of the bankruptcy, so her payments are voluntary and enough to cover the accruing interest payments.

(Doc. 24).

While the plan calls for "regular monthly payments" on the student loans, paragraph 15 of the stipulation indicates the regular monthly payment will be zero dollars during the life of the plan with the possibility that Debtor may choose to pay at least the accrued monthly interest.

## CONCLUSIONS OF LAW

The question presented is whether Debtor's Chapter 13 plan can be confirmed over the Trustee's objection where the proposed plan separately classifies a nondischargeable long-term federal student-loan debt to be paid outside of the plan, but calls for 100% payment to all other creditors during the life of the plan. Generally, this question requires a two-prong analysis: a) whether, in light of the objection, the plan complies with 11 U.S.C. § 1325(b)(1), and b) whether, under 11 U.S.C. § 1322(b)(1), the plan unfairly discriminates against a designated class of creditors or claims. The Debtor bears the burden on both issues and must prevail on both issues to have the plan confirmed. Finding the first issue to be dispositive, the Court ends its analysis there.

4

**A.     Whether the proposed plan complies with § 1325(b)(1).**

Section 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1) (2017).

"As previously noted, § 1325 provides that if a trustee or an unsecured creditor objects to a Chapter 13 debtor's plan, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or 'provides that all of the debtor's projected disposable income to be received' over the duration of the plan 'will be applied to make payments' in accordance with the terms of the plan." Hamilton v. Lanning, 560 U.S. 505, 509 (2010); see also 7 Norton Bankr. L. & Prac. 3d §§ 151:19-20 (October 2017). "BAPCPA left the term 'projected disposable income' undefined but specified in some detail how 'disposable income' is to be calculated." Hamilton, 560 U.S. at 509. In calculating *projected* disposable income, a bankruptcy court "should begin by calculating disposable income, and in most cases, nothing more is required." Id. at 519. "It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." Id.

As to the first alternative under § 1325(b)(1)(A), the Court cannot conclude that the present plan distributes money that is "not less than the amount of such claim" or distributes money that equals "full repayment of the unsecured" student loan. Hamilton, 560 U.S. at 509. Therefore, the plan fails to comply with § 1325(b)(1)(A).

5

As to the second alternative under § 1325(b)(1)(B), the parties have presented no argument concerning "projected" disposable income. Certainly, no "known or virtually certain information" on Debtor's future income or expenses has been presented. At the confirmation hearing, Debtor's counsel stated simply that he did not know what Debtor's future income would be. In light of this, the Court cannot quantify Debtor's "projected" disposable income any differently than her current disposable income. Therefore, in light of Debtor's failure to pay all of her disposable income into the plan, the plan fails to comply with § 1325(b)(1)(B).

This issue is dispositive of the question presented and the Court is without any legal authority to confirm the proposed plan.[2] See 11 U.S.C. § 1325(b)(1) ("may not approve the plan unless . . ."). For this reason, the Court need not address unfair discrimination under § 1322(b)(1). The Court will sustain the Trustee's objection to the plan and confirmation of the plan will be denied. A separate Order in accordance with these Finds of Fact and Conclusions of Law will be entered contemporaneously herewith.

---

[2] Bankruptcy courts have labored to devise a methodology for addressing the classification of student-loan payments outside a Chapter 13 plan. See In re Pracht, 464 B.R. 486 (Bankr. M.D. Ga. 2012) (citing numerous opinions on the subject); *Section 1322(b)(5) Does Not Trump § 1322(b)(1)*, 04-27-11 West's Bankr. Newsl. 2 (April 27, 2011). Typically, a debtor classifies a federal student loan outside the plan in order to pay 100% on the student loan while paying pennies-on-the-dollar to other unsecured creditors. Often, the intent is to take advantage of federal repayment programs that lead to loan forgiveness outside bankruptcy, years after the plan is complete. Pracht, 464 B.R. at 492 ("Accordingly, allowing her to discriminate in favor of the [federal] student loan debt advances the goal of the debtor's fresh start."). The instant case, however, is the opposite of this norm. Here, the plan calls for 100% payment to all non-student-loan unsecured creditors but calls for no payment or interest-only payments to the student-loan creditor.